Good morning, Your Honors. This matter comes before the court on my client's appellant's request that it review the decision below from the United States District Court here in the Western District of Washington under several federal laws as well as the state laws incorporating those and specifically the U.S. District Court had jurisdiction as does this court to deal with the prior and present appeals. The Individuals with Disabilities Education Act is at issue or the IDEA as it will be termed today I'm sure. The Americans with Disabilities Act is also involved as well as the 504 Act of 1973. My clients have brought this matter to the court's attention due to their child's failure to have been properly accommodated essentially both under the law primarily providing that he be given a free and appropriate public education under the IDEA as well as be properly accommodated through the Americans with Disabilities Act and the 504 Act is involved as well because of not only was there a 504 plan that had been instituted by the school district unilaterally when there hadn't been yet an IEP involved but as well the court has the ability to incorporate and implicate. Tell me counsel beyond the issue of the copying of the testing protocols and the copyright issues that are associated with that putting that aside what exactly did the school district not do that they should have done? In general terms or with respect to specifically what is it that and I know the copyright access to protocols issue anything else what besides that? The school district failed to initially evaluate and then incorporate an outside evaluation which dealt with several areas of concern for the student in reading and math. We know they did evaluate you don't like the evaluation but to tell us the problems they didn't evaluate I think misses the mark and the administrative law judge and the district court both talked about both subjects at great lengths what's wrong with that why shouldn't we affirm? And be specific please one of the concerns I have here is that I understand there are lots of grievances but as I read the briefs I'm not sure I understand what exactly what the grievances are. Well in the end reading was the primary issue for the student and and he tested within the average range for reading didn't he? Well in being duly exceptional essentially as a term which incorporates a person's perhaps functioning in an average or even above average sense on the one hand but needing accommodation in another sense because of having a reading or other disability that those are the reasons why despite having average. I'm kind of waiting for an answer to the question I posed do you recall what the question was? Yes your honor. How did he test on reading? Yes average. Okay so so why exactly is there a cause of action based on the failure to give him accommodations for reading when in fact he tested in the average range? Because of having a deficit in that area despite. What deficit? You just told me he tested in the average range. Sure all students could be better but that isn't something that customarily triggers obligations under the statutes. If you're testing in the average range then presumably he's obtaining a FAPE for that particular subject area. Well actually that isn't true insofar as when I said alluded to a moment ago a person is duly exceptional in that they would be achieving at a much higher level should they receive the proper accommodations because they are tested as having. Can you give me any authority that says that there is a cause of action under IDEA because somebody could be doing even better even though he's not in a deficient range? Yes there are a number of there's case law. I'm not asking you to tell me there are a number of cases I'm asking you tell me what the cases are. What's the authority you rely upon? I am not familiar with that authority. Well your honor as I think. The obligation is to provide a free appropriate public education. It's not to make everybody a candidate for Harvard. Correct your honor but when a person has a deficit that is shown to impact their ability to perform better that has been under appreciated in a number of cases. I think MCV Antelope Valley High School is a Ninth Circuit decision in California that dealt with some of those issues and and I think the the issue of the parents not being able to another Ninth Circuit decision related to the specificity of that individual student regardless of the level of their their abilities and testing as your honors is noting the participation in MC Antelope Valley High School with respect to the the participation in the formation of the IEP being being an issue for the parents with relation to that that individual's needs. Were the parents of your clients were they ever excluded from a meeting? Was there ever a failure to invite them to a meeting? There wasn't a failure to invite them but there was a failure to appreciate what their position was and their their feedback and conclusions were with respect to issues. Their got copies of the testing protocols they were not going to engage. So number one what is the basis for concluding that the district was incorrect when it said we can't give you let you copy these because of copyright concerns. Do you have any reason to believe that was wrong? Well yes your honor with respect to Ms. Daniels necessity to have further accommodation than that. Under necessity the school district says we can't do this. There are copyright protections. We can't just copy it and give it to you. We will give you access. We will make it available but we can't give you copies. Do you have any support for the idea that they are wrong? Well the the ADA does require accommodations unless unduly burdensome and I would. The district has to break the law. If they have to break the law they have to break the law to to satisfy IDEA. Well I would support the school district not doing that if it was unduly burdensome. So that would be the analysis and if it's illegal and there's no way around it then no they shouldn't. Do you know the answer to that now? Is it is were they correct or not correct? I think they weren't because the copyright laws don't prohibit in accommodation in certain scenario but aside from that even if assuming that copying isn't the answer. There's really not an answer in that answer. You want to try again as to what the copyright laws provide? Do you have any citation to the copyright laws? Is there anything in your brief that talks about this? I appreciate that well the copyright laws as I understand don't allow copying of the the material that is produced you know as you know commonly understood as well within any any published any publication essentially. That's that's overall what it what it intends but my client really was requesting the answers her her child's answers. Those aren't exactly was I mean the district court noted this I think the ALJ noted this what exactly is is having that going to accomplish in terms of permitting her to participate meaningfully in the IEP? The fact that she knows what words he misspelled how is that going to affect anything? Well it would give her an opportunity to receive you know essentially half. This is all theoretical give me something real. How is it going to have an impact here? What's the prejudice? Well the Ms. Daniels was prevented from having adequate time to review these documents. That's theoretical give me something real. I asked what was the impact? You're telling me she didn't have enough time. I'm asking what's the impact of not having enough time? What could she have absorbed if she'd had as much time as she wanted if she'd gotten a copy? What difference would it have made? Well being that her disability relates to processing speed and and and things related and it doesn't take real long to figure out what word was misspelled. Once she knows that what is she going to do with the information? Well she would be given the time she would need at home and with someone to assist. You're still telling me what she thinks she needs. You're not telling me what difference it would have made. Well your honor. Do you have an answer to the question of what difference it would have made? I believe it was very important to her understanding what was at play with respect to the evaluation the information of the IEP and that if she had at least a portion of things. Well if she knew that he had been measured at a certain level what difference would it have made to know which words were misspelled? Because she could incorporate that into her understanding you know with voluminous effort. What difference would her understanding have made because she knows that he misspelled these words instead of those words? Well this is all theoretical. You're telling me it would have made a difference but you're not telling me what the difference is and the district court specifically observed a failure to demonstrate what difference it would have made. So now you're on appeal. What's wrong with the district court's finding on that subject? Well there it wasn't just her ability to take those items home which would have given her time without the pressure of having to you know essentially leave a room with the school district where they weren't answering her questions on the matter as well which is important. But in addition. I take it you don't have an answer to my question because you're not talking about that. You're talking about what she thinks she needed not what difference it would have made. That's a different subject. I understand. So what difference would it have made last time? Otherwise I'll just give up. She would have had time because of her need to process at a greater length and of time than she was given and she wasn't given help in explaining by the school district and that was adequate and her accommodation from her doctor indicated her need for those types of things to an extent that should have been sufficient to allow for that or also an alternative beyond that that wasn't provided. And I there wasn't an adequate opportunity for her to review or get an explanation or any other alternative beyond that as well your honor. The one question I have is once she refused to participate in the meeting one of your claims is that the state should have proceeded with developing the plan. Is there a law that requires them to proceed? Well yes. I mean even as cited by the school district themselves as Washington administrative code that provides that there does not need to be the parents present in order for the IEP to proceed. I believe the law says that they may proceed so. Yes they're not prohibited that that is correct. So is but is the failure to proceed a violation of the IDEA or is that your argument? Yes because the student did need those supports as demonstrated otherwise. And also I should note it seems that your honors may have appreciated things in a bit of a different way with respect to her participation as she was participating. She just wasn't wanting to go to a meeting at which she would continue to be sort of flummoxed with the inability of the school district to properly appreciate the issues at play with her child. Counsel do you also want to reserve some time for rebuttal? Yes your honor. Why don't we do that now? Okay thank you. Good morning may it please the court. Sarah Johnson on behalf of the North Shore School District. In respect for the court's time I really want to focus my argument here on the questioning that's already taken place as well as answer any questions that you might have regarding the district's actions in this case. I want to first turn to parents raising of the Americans with Disabilities Act and section 504 of the Rehabilitation Act because it's the district's position that those claims are not properly before this court. They were not raised below. They haven't been considered and any claims really should not be considered by this court in first instance. We have addressed the merits of those claims in our briefing and submit that there is no merit to those claims even were the court to consider them. I want to turn next to the parents claim about a failure to evaluate the student. I think what the parents are referring to is actions that took place prior to the November 2017 evaluation but again those issues are not before this court. We do disagree with parents representations of what occurred but in any event that was a claim that the parents could have raised had they timely challenged it and they didn't. I think as they conceded before the district court those any claims that the two-year statute of limitations based on their November 2019 due process filing date. With respect to reading I think Judge Clifton you identified the very issue that we would point out which is that the student was tested and found to be within the average range in that area and so the IDEA specifically under the significant discrepancy model there was not a significant discrepancy there such that the student would qualify for special education services in that area. I also want to to talk a bit about the testing protocols. The issue here really is was sufficient access given to the parent in order for them to meaningfully participate in the IEP process and I think with the what the record demonstrates here is that the parents were provided with with more than sufficient access. There was a school psychologist who was made available to answer questions, to explain the protocols, there were no time limits placed on the amount of time that the parent had to review those protocols. So in other words you don't really think it matters whether or not the district was right or wrong on its copyright analysis. It doesn't really matter to your position. I would agree with that. I mean I think that there is authority out there and some guidance from OSAP around whether or not districts are required to provide these kinds of testing protocols and you know that typically they're not because the if you're if you give sufficient access to those protocols and allow them to be inspected and reviewed that's enough for the parent to be able to understand the basis for the testing and I think that you're exactly correct that at no stage in these proceedings have the parents said well this isn't this is why I needed a copy right it's just simply that you know they didn't they wanted the copy and they didn't want to move forward without it. Can you like the question how do you spell cat or what? Depending on the the various assessments yes and so these are nationally normed standardized assessments that are created by test publishers and so the district actually licenses the right to use them and has agreements with those publishers about how they'll be used and how the integrity and the security of those tests will be protected and so yes it would be the prompts or the questions that would be presented to the student as well as the answers that are being recorded. What I kind of gleaned from what the plaintiffs has presented is that the mother here has some disabilities some learning disabilities and the reason that they wanted access is that as using counsel's term she the mother got too flummoxed in these meetings one-to-one meetings and I assume wanted just give me the materials and I can go take them and and it'll be easier for me to absorb this I'm speculating but that's I think what they're saying if that's the case if the if the parent is putting the child to one side the parent has issues in terms of how to get this information why wouldn't the school district perhaps at that point say well you don't absolutely need them but because of the parent situation we are going to let you have this material and there was testimony in the record on this point but from the school psychologist as well as the special education director in the district and and what their testimony was was that in order to protect that test integrity and security it's we can't just hand out copies of them now what the district could have done and what was offered to the parent was you can sit in a room at the district office read them all day long you know there were no limitations placed on that the other accommodation that the district offered was that if the parents identified a provider who was qualified and licensed to receive and maintain the security of those protocols that they could have had them sent to someone else to read and interpret on their behalf but the parents didn't take the district up on any of those offers they just said well without copies that's you know that's sort of the end-all be-all for them. Relatedly so once the parents refuse to participate in that IEP assessment at what point does doesn't the state have an obligation to then proceed without the parent at some point? Sure I and I want to point the coordinate and I and I do understand the you know the argument that parents are making here so there's two aspects to this right so the first is we're at the evaluation stage right now and an eligibility determination under the IDEA needs to be made by a team of people that includes the parents and that's specific under the Washington regulations that we cite there's a specific provision related to just eligibility 03050 is specific to when a specific learning disability is being considered there's also a requirement that a parent participate in the decision around whether or not the student's going to be eligible. Now here what the district determined was that given the number of questions and issues that the parents were raising that it really felt it was in just very very important that the parents attend a meeting so that the district could attempt to address those concerns and questions so that there could hopefully be some resolution around moving forward excuse me moving forward with developing an IEP for the student so that we could try and be on the same page and so that's why the district was asking let's go ahead and have the meeting. Now to your question before there is nothing that compels the district to move forward there is nothing under the IDEA that says well if the parents don't want to participate we have to go ahead and do you know take steps without them present right and in fact when you look at the IDEA with respect to participation in an IEP meeting the district can move forward with a meeting but it's not obligated to and under these circumstances where the parents are you know now ironically alleging that we denied them parental participation for us to have said well we're going to cut you out of this process at that time I think would really be inviting a claim against the district that we did deny parental participation when on the record here we simply didn't we insisted that they be part of this process in order to try and serve this student's best interests and get to agreement on a plan that would meet his needs. So but so the district could have decided to move forward or just chose not to be under the unique circumstances of this case? I think it's an open question honestly your honor as to whether we could have moved forward I do think that there could have been a claim that we denied parental participation because the the team didn't include would not have included the parents and they're a necessary member that you may proceed as long as you document all the all the outreach you did to the parents to try to get them to. So that would be true with respect to an IEP what we what the stage we were at at that point was the initial eligibility determination and so when we're making that initial eligibility determination the law is pretty clear very clear in Washington that the parents have to be part of that process and those are the two WAC sites that I provided to you earlier. What the parents are pointing to is once eligibility is found then when you go to the IEP yes we can we may proceed without the parents so long as we document that we are unable to get them to come to the table. Now here the parents did come to the IEP. Correct. Now that was never implemented because the child went to a different school how is it that and as I recall I may have this wrong but they did come and meet but declined to sign the the IEP it was developed or something like that? So there there was a four-hour long facilitated IEP meeting that took place in May where we brought in an outside agency to help facilitate the discussion between the district and the parents. As a result of that meeting there was a final IEP that was developed and presented to the parents. The parents did sign consent to allow the district to implement that IEP but at the same time they stated that they didn't agree with the IEP and so the district again offered to meet to discuss those questions or concerns that they had but at that point the student was no longer attending in the district and the parents effectively sort of disengaged with the district on that on that piece. So there was a final IEP developed it was never implemented parents have not put in any evidence at all in the record as to why that IEP was inappropriate at the time it was developed and I think under this court snapshot rule when you look at the face of the IEP itself and you look at it compared to the evaluation I think there's no question that that was an appropriate IEP for the student and that the parents just simply declined to access the district's offered services. I don't know if the court has any other questions for me but looks like thank you very much. Thank you so much. With respect to your honors those issues raised by counsel and alluded to previously by your honors as well I'd like to clarify a couple of areas of law counsel had had a mention of in one respect with regards to the need for the reading related areas of evaluation having been deficient and therefore the subsequent IEP as on that point. The significant discrepancy can be seen where a person tests normally yet still needs supports because they're seen as having greater capability than the average testing does indicate. So that's to further expound on that issue and I would. Where in either of your briefs or in the record can we find evidence that supports the proposition that this student CD fell into that category? The testing done by the Riley report as as referenced in our briefing and in the record below relates to that that testing and and the court and the ALJ said that had been incorporated as part of the evaluation. So what exactly I mean you may disagree with the assessment but that doesn't tell me that the district court clearly erred in reaching the finding that it did. Well in the end it I mean it school district may say it was had duly considered just by you know claiming they had but and then in referencing having reviewed it and in their evaluating but they did not incorporate reading related supports at all. And reaching the conclusion that that support was not necessary. You could you've told me that it could still be necessary and the law could still require it and hence I posed you the question where in the record was there evidence that CD fell into that category and you made reference to is it the Riley evaluation and I said to you and the ALJ and the district judge looked at that and concluded the evaluation was still appropriate and it properly took into account even if it didn't adopt everything that you have drawn from the Riley report. What's clearly erroneous about that? Well the other the other independent evaluations and medical expertise as noted in our briefing a bit did also indicate those types of issues and recommendations which were incorporated by the school district. Thank you and then with respect to you I just want to point out as in our briefing that the school district also failed to implement quite a quite a list of policies and these laws that are implicated and then wanted to point out as well as deficient from council's argument but part of their briefing below with respect to the need to the need to evaluate with respect to eligibility when there's a learning disability and I'm sorry with more specifically the need to and what they need to do if a parent isn't at a meeting as compared to a parent participating. So the issue and the distinction I'd like to draw out is that the school district was in collaboration with the parents before really not at an actual meeting for the IEP which has been more discussed but even but and after and very extensively the you I'm sorry I'm two and a half minutes over if you want to wrap up. So I just want to point out that the parents did participate just because they didn't go to a meeting that's what the law the law distinguishes as well. Thank you your honor. Thank you counsel this case is submitted.
judges: CLIFTON, BUMATAY, Seeborg